## Artman et al. *v.* Giles et al., Appellants.

*Equity pleading—Misjoinder of parties.*

A bill in equity which joins separate respondents, acting in different capacities, upon different rights, and not chargeable with any joint liability or interest in the relief sought, is defective.

A bill in equity to restrain judgment creditors and the sheriff from making a sale of goods, and to remove an assignee for the benefit of creditors, is defective in joining the sheriff and assignee as parties defendant.

An injunction to stay proceedings at law should go against the party

not against the sheriff or other officer who is already under the mandate of one court, and should not be put in peril of disobedience by discordant orders of conflicting jurisdictions. For the same reason the assignee should not be made party. He is accountable to another court, which has the exclusive control over his official action. Per Mr. Justice MITCHELL.

*Confession of judgment—Fraud—Creditors—Attaching creditors under act of 1869.*

Neither simple contract creditors, nor attaching creditors, under the act of 1869, have a standing in equity to restrain a judgment creditor from proceeding by due course of law to obtain satisfaction of his judgment.

Hunter's Ap., 40 Pa. 194; Thompson's Ap., 107 Pa. 559; and Fowler v. Kingsley, 87 Pa. 449, distinguished.

*Assignee for benefit of creditors—Removal—Creditor's bill.*

It seems that if an assignment is clearly fraudulent and collusive and intended to hinder and delay creditors and tie their hands against fraudulent judgments, and to leave them without legal remedy, the assignee may be removed, and the assignment itself vacated and declared void on a creditor's bill, but this can only be done by a bill filed in the court having jurisdiction over the assignment.

Argued March 30, 1893. Appeal, No. 183, Jan. T., 1893, by defendants, Leo Giles, Max Giles and Simon Dessau, judgment creditors of Isaac Giles, from order of C. P. No. 3, Phila. Co., Sept. T., 1892, Nos. 677, 678 and 679, continuing preliminary injunction in favor of E. R. Artman-Treichler Co. et al., against Isaac Giles, the appellants, the sheriff and the assignee for creditors of Isaac Giles. Before STERRETT, C. J., GREEN, MCCOLLUM, MITCHELL and DEAN, JJ.

Bill in equity by simple contract creditors and attaching creditors against Isaac Giles, his judgment creditors, Leo Giles, Max Giles and Simon Dessau, the sheriff, and the assignee in trust, for creditors of Isaac Giles, for an injunction to restrain proceedings at law.

The bill averred that certain of the plaintiffs were creditors of Isaac Giles, trading as Giles & Co., and that certain others of the plaintiffs were lien creditors, having issued attachments under the act of 1869, and levied upon the goods and chattels of the defendant; that Isaac Giles, on Nov. 19, 1892, confessed judgment to the defendants Max Giles, Leo Giles and Simon Dessau, and that execution had issued upon these judgments; that on Nov. 21, 1892, Isaac Giles had made an assignment for the benefit of creditors to Mayer L. Kahn. The bill further averred

that the sheriff's sale was not advertised and that the goods had not been catalogued. It also averred that the judgments had been confessed to hinder, delay and defraud creditors of Giles & Co.; that the assignment for the benefit of creditors was part of a fraudulent scheme, and that the assignee was not acting in good faith. It further charged Isaac Giles with various acts of fraud and asked for the following relief: (1) That an injunction might issue restraining the judgment creditors and sheriff from making sale of the goods and effects of Giles & Co. (2) That the assignee be removed and a receiver appointed. (3) Further relief.

The court continued an injunction restraining Max Giles, Leo Giles and Simon Dessau, and Horatio P. Connell, sheriff, from making the sale of the goods and effects of Isaac Giles, trading as Giles & Co.

*Error assigned* was above decree.

*John G. Johnson, Max Herzberg* with him, for appellants.— A simple contract creditor before judgment has no right, even though he has acquired a lien under the act of 1869, to contest in equity a fraudulent judgment by his debtor: Wiggins v. Armstrong, 2 Johns. Ch. 144; Angell v. Draper, 1 Vernon, 399; Shirley v. Watts, 3 Atk. 200; Bennett v. Musgrove, 2 Vesey, Sr. 51; Balch v. Wastall, 1 P. Wms. 445; Mitford's Eq. 115; Cooper's Eq. Pl. 445; Bigelow v. Andress, 31 Ill. 322; Martin v. Michael, 23 Mo. 50; Southard v. Benner, 72 N. Y. 426; Smith v. R. R. Co., 99 U. S. 401; Bassett v. St. Albans, 47 Vt. 314; Pendleton v. Perkins, 49 Mo. 565; Skeele v. Stanwood, 33 Me. 309; Barrow v. Bailey, 5 Fla. 9; Tate v. Liggat, 2 Leigh (Va.), 84; Smith v. Millett, 12 R. I. 59; Ferguson v. Bobo, 54 Miss. 121; McMinn v. Whelan, 27 Cal. 300; McDermott v. Blois, 1 R. M. C. (Ga.) 281; Uhl v. Dillon, 10 Md. 500: Weil v. Lamkins, 3 Neb. 384; Gorton v. Massey, 12 Minn. 147; High, Inj. § 131. In this case the attaching creditors acquired no lien, because title to the merchandise at the time of their attachments was vested in the assignee for the benefit of creditors.

For any dereliction of duty on the part of the sheriff or assignee the remedy was not in equity. There was no such

dereliction. , If the judgments complained of were fraudulent, even if the attaching creditors held a lien, the common law remedy of attacking such creditors should have been resorted to.

The common law affords a remedy which is sufficient and is exclusive.

*John Sparhawk, Jr., John Weaver* and *John M. Gest* with him, for sundry appellees.—This is an interlocutory decree with which the Supreme Court will not interfere: Sheaffer's Ap., 100 Pa. 380 ; Scranton Gas Co. v. Northern Coal Co., 145 Pa. 21 ; Penrose v. Nixon, 140 Pa. 45 ; Roaring Creek Water Co. v. Girton, 142 Pa. 92 ; Dodd v. Smith, 144 Pa. 340 ; Black Lick Co. v. Saltsburg Gas Co., 139 Pa. 448 ; Thompson Glass Co. v. Fayette Fuel-Gas Co., 137 Pa. 317 ; Penna. R. R. v. Freeport, 138 Pa. 91 ; Acheson v. Stevenson, 130 Pa. 633 ; Curwensville Borough's Ap., 129 Pa. 74 ; Patterson's Ap., 129 Pa. 109 ; Whiteman v. Fayette Fuel-Gas Co., 139 Pa. 492.

The goods are not perishable and should not be sacrificed at a sheriff's sale.   Irreparable injury will be the result of the dissolution of this injunction.   No preference is asked by the appellees, but only that the goods may not be sacrificed pending the determination of the rights of the judgment creditors to their alleged lien.   The custody of a receiver or an assignee can protect all parties: Act of June 14, 1836, P. L. 632.

The facts in this case disclose not only a fraudulent judgment, but that the debts due the appellees were fraudulently contracted, and that the fraudulent contraction of the debts, the fraudulent confession of judgments, the lumping sheriff's sale, under the control of the debtors, conspirators, and the fraudulent assignment for the benefit of creditors formed, as a whole, a concerted scheme to defraud the appellees.

The appellants cited as the leading case, Wiggins v. Armstrong, 2 Johns. Ch. 144, where the plaintiffs had not obtained any lien whatever upon the property of the defendant, nor did the case show ·(as does this at bar) combination as well as fraud.   As it was, Chancellor KENT rendered his decision, as it seems, reluctantly against his first impression.

Bigelow v. Andress, 31 Ills. 323, relied upon by the appellants, was decided purely. upon the ground that the plaintiffs seeking relief had no lien upon the defendant's effects.

Reference to the case of Brashear v. West, 7 Peters, 608, will show that the Supreme Court of the United States (opinion by Chief Justice MARSHALL), in construing the act of Pennsylvania in regard to foreign attachments, held that the service of an attachment upon a garnishee placed the goods of the debtor in the garnishee's hands in custodia legis and gave the plaintiff a lien.

In Smith v. R. R., 99 U. S. 400, the complainant had no lien upon the fund.

In McDermott v. Blois, 1 R. M. C. (Ga.) 281, the demurrer to the bill was sustained because the complainant was not a lien creditor.

In Cohen v. Meyers, 42 Ga. 46, the bill charged insolvency of the debtor and that he had fraudulently transferred his goods to a third person, who was charged with complicity in the fraud, and that the debtor had bought the goods with intent to defraud the plaintiffs; the court allowed a receiver at the instance of a simple contract creditor who had not reduced his claim to judgment. See also to the same effect Heyneman v. Dannenberg, 6 Cal. 376 ; Field v. Holzman, 93 Ind. 205; Fowler's Ap., 87 Pa. 449 ; Cogburn v. Pollock, 54 Miss. 639 ; Blum v. Schram, 58 Texas, 524; High, Inj. § 1405; Manufacturing Co. v. Bradley, 105 U. S. 182.

A creditor without having first obtained a judgment at law may come into a court of equity to set aside fraudulent conveyances of his debtor made for the purpose of hindering and delaying creditors and to subject the property to the payment of the debt due : Thurmond v. Reese, 3 Ga. 449; Cornwell v. Radway, 22 Wis. 260 ; Sanderson v. Stockdale, 11 Ind. 563 ; Des Brisay v. Hogan, 53 Me. 554; Day v. Washburn, 24 Howard, 352; Tappan v. Evans, 11 N. H. 311; Holt v. Bancroft, 30 Ala. 193; Case v. Beauregard, 101 U. S. 691; Bank v. Harvey, 16 Iowa, 141 ; 2 Bigelow, Fraud, p. 80 ; Botsford v. Beers, 11 Conn. 369 ; Weightman v. Hatch, 17 Ill. 281.

In the supervision of trustees, especially assignees for the benefit of creditors, the courts of common pleas are wisely clothed with very large discretionary powers, and their orders and decrees should not be modified or reversed, except for manifest abuse of such discretion : Weiskettle's Ap., 103 Pa. 522 ; News v. Shackamaxon Bank, 16 W. N. 207 ; Union Banking

Co. Case, 12 Phila. 214; Klapp's Assignee v. Shirk, 13 Pa. 589; Neal v. Bank, 11 Pa. 17; Irwin v. Keen, 3 Whart. 347; Zerbe v. Miller, 16 Pa. 495.

The right of a creditor is not taken away or postponed by the existence of a voluntary assignment for the benefit of creditors · Bank v. Hopkins, 111 Pa. 329.

*William S. Divine, Samuel B. Huey* with him, for appellees. —The judgments were fraudulent: United States v. Conyngham, Wallace C. C. R. 178; Eberle v. Mayer, 1 Rawle, 366; Com. v. Strembach, 3 Rawle, 341: McClure v. Ege, 7 Watts, 74; Mentz v. Hamman, 5 Whart. 150; Weir v. Hale, 3 W. & S. 285; Baum, Raiguel & Co. v. Ahl, 29 Pa. 387.

That a judgment fraudulently given by collusion between debtor and plaintiff in such judgment for the purpose of hindering and delaying creditors can be attacked collaterally is beyond question: Reed's Ap., 71 Pa. 380; Thompson's Ap., 57 Pa. 175; Clark v. Douglass, 62 Pa. 408; Sheetz v. Hambest, 81 Pa. 102; Second National Bank of Titusville's Appeal, 96 Pa. 460.

*Julius C. Levi,* for sundry appellees.—Attaching creditors have a standing to attack the judgments: Wade on Attachments, ed. 1886, § 33, p. 77; Wait, Fraudulent Conveyances, ed. 1889, § 81, p. 127; Bates v. Plonsky, 28 Hun, 112; Greenleaf v. Mumford, 19 Abb. Pr. 469; Rinchey v. Stryker, 28 N. Y. 45; Carr v. Van Hoesen, 26 Hun, 316; Smith v. Longmire, 24 Hun, 257; Hall v. Stryker, 27 N. Y. 596; Castle v. Lewis, 78 N. Y. 131; Ocean Nat. Bank v. Olcott, 46 N. Y. 12; Deutsch v. Reilly, 57 How. Pr. 75; Erie Ry. v. Wilkes-Barre Coal & Iron Co., 9 Phila. 262; Fowler's Ap., 87 Pa. 449.

OPINION BY MR. JUSTICE MITCHELL, May 22, 1893:

There are some formal objections to the bill, which should be briefly noticed. It joins separate respondents, acting in different capacities, upon different rights, and not chargeable with any joint liability or interest in the relief sought. Among these respondents are the sheriff and the assignee for the benefit of creditors, neither of whom is a proper party to a bill of this nature. The sheriff is not, because he is acting under the

command of a writ, and accountable for his action, to the court from which it issued. This is not practically of any importance in the present case, because the writ and the bill are in the same court, but it is incorrect practice. An injunction to stay proceedings at law should go against the party, not against the sheriff or other officer who is already under the mandate of one court, and should not be put in peril of disobedience by discordant orders of conflicting jurisdictions. For the same reasons the assignee should not be made party. He is accountable to another court, which has the exclusive control over his official action, and may perchance hold that he should have done the very thing this injunction prohibits.

But the substantial question is the right of complainants to invoke the aid of a court of equity to interfere with the due course of proceedings at law by a creditor to obtain satisfaction of his judgment. It is conceded that this injunction is without precedent in Pennsylvania. The complainants are of two classes, one mere simple contract creditors with neither judgment nor lien, the other, also without judgment, but with such lien as they have obtained by attachment under the act of 1869. As to the former the overwhelming weight of authority is against the asserted right. It is enough for us to quote the deliberate opinion of Chancellor KENT in Wiggins v. Armstrong, 2 Johns. Ch. 144, where, after stating frankly that his first impression was in favor of the jurisdiction in equity, he concludes after examination of the cases that it could not be sustained, and that there ought to be no interference until the creditor has established his title by judgment. " On the strength of settled authorities " he dismissed the bill. The cases cited by appellant show that this view has been followed with great uniformity in nearly all the states where the question has arisen. The cases also show that the same general rule applies to the second class of the complainants, those who have issued attachments. Exceptional cases may arise in which creditors having a lien, even though only by attachment on mesne process, may have a standing for assistance in equity, but the presumption is against them and for the same reasons as in regard to the other class. As a general rule they are left to their rights and remedies at law.

The present is not such an exceptional case as would bring

it within our authorities.    As already said there is no precedent
upon the same state of facts, but the general rule that equity
will not interfere between debtor and creditor, but will leave
each to his rights and his remedies at law, is settled beyond all
question.    The cases in which equity has been most frequently
invoked, are where the creditor is alleged to be proceeding un-
der forms of law, but in violation of other parties' rights.    Of
this class are Gilder v. Merwin, 6 Whart. 522; Riley v. Ell-
maker, 6 Whart. 545; Reeser v. Johnson, 76 Pa. 313; Taylor's
Appeal, 93 Pa. 21; Davis v. Michener, 106 Pa. 395; and Walk-
er's Appeal, 112 Pa. 579.    The only exception so far recog-
nized is in the case of a levy upon a wife's separate property
for a debt of the husband.    It was held in Hunter's Appeal, 40
Pa. 194, that a bill would lie for an injunction in such case,
but the decision was put upon the ground that the statute ex-
pressly prohibits such a levy, and the fact that the wife's title
was undisputed.    In the subsequent case of Thompson's Ap-
peal, 107 Pa. 559, an injunction was awarded against repeated
actions of ejectment brought by a sheriff's vendee of the hus-
band's title, but it was again on the ground that such action
was contrary to the statute, the wife's estate being undoubted,
and the ejectments not brought in good faith.    If there be any
doubt or dispute on the facts the creditor is entitled to levy and
sell, and proceed by ejectment on the sheriff's deed.    Winch's
Appeal, 61 Pa. 424.    In this case it is said by AGNEW, J., that
the jurisdiction in equity " was never intended to be used to
obstruct the collection of debts."    And in Taylor's Appeal,
supra, the present Chief Justice, after stating the rule that equity
will not intervene, but the creditor will be allowed to proceed
with his execution, and test the title by ejectment, continues :
" It may happen that the bona fide owner of real estate is sub-
jected to the inconvenience of having his property levied on
for the debt of one who is not and has never been interested
therein. . . . but such results cannot be wholly avoided.    Re-
lief must be sought when they so occur, in speeding the deter-
mination of the questions in dispute by such means as are
provided by law for that purpose."

The only case at all analogous to the present, in which a
creditor not having a judgment has been permitted to interfere
with the debtor's disposition of his property, is Fowler v. Kings-

ley, 87 Pa. 449. In that case the bill averred that the debtor had conveyed land to his son-in-law, by collusion to defraud his creditors, and that the grantee was about to convey to bona fide purchasers. The debtor having died, the bill was sustained upon the ground that the creditor complainant, though without a judgment, had an express statutory lien, which gave him a standing.

To sustain the present injunction would be going a decided step farther than any case adjudicated, and in opposition to established principles. The subject is not without serious difficulties, in either aspect. That the present practice affords some opportunities for fraud must be conceded, and the case in hand, full as it is of suspicious circumstances, is an apt illustration. But on the other hand, the contrary practice would be susceptible of enormous abuse, if every suspicious or unscrupulous self-asserted creditor may, without any proof of his own claim, arrest the regular process of law and tie the hands of the debtor and his bona fide creditors, by vague and general charges of fraud and collusion, including, as in the present case, with very slight if any evidence at all, the sheriff and the assignee for the benefit of creditors. "A rule of procedure which allowed any prowling creditor, before his claim was definitely established by judgment, and without reference to the character of his demand, to file a bill . . . . to impeach transfers or to interfere with the business affairs of the alleged debtor, would manifestly be susceptible of the grossest abuse. A more powerful weapon of oppression could not be placed at the disposal of unscrupulous litigants." Wait on Fraudulent Conveyances, sect. 73.

As said by our brother STERRETT, in Taylor's Appeal, already quoted, inconvenient results in individual cases cannot be wholly avoided, and the relief must be sought by the means provided by law. We think it better to stand on the established remedies. And these are not so inefficient and inadequate as appellees seem to think. The creditors who have attachments on the goods have of course a standing to rule the sheriff to pay proceeds of sale into court, and there to question the validity of the confessed judgments, so as to increase the fund going to the assignee for their benefit. The assignee can be made to do his full duty, or be discharged by the court having

jurisdiction over him. And it may be that if the assignment is shown clearly to be fraudulent and collusive, and meant to hinder and delay creditors, and that their hands are thereby tied as against the fraudulent judgments, and they are left without legal remedy, then not only can the assignee be removed, but the assignment itself may be vacated and declared void on a creditor's bill. This question however is not raised in the present case and we do not now decide it. It can only be raised on a direct attack by a bill for that purpose in the court having jurisdiction over the assignment. The present bill cannot be sustained.

Injunction dissolved and bill dismissed.

MR. CHIEF JUSTICE STERRETT dissented.